```
             UNITED STATES DISTRICT COURT
             EASTERN DISTRICT OF KENTUCKY
                    NORTHERN DIVISION
```

**CIVIL ACTION NO. 2:21CV96 (WOB-CJS)**

**JASON OSWALD, ET AL.**                                    **PLAINTIFFS**

VS.            **MEMORANDUM OPINION AND ORDER**

**GOVERNOR ANDY BESHEAR**                                    **DEFENDANT**

*Introduction*

This lawsuit is brought by parents on behalf of their children, who are students at St. Joseph Elementary School, a Catholic parochial school in Cold Spring, Kentucky. Plaintiffs challenge the legality of an Executive Order issued by Governor Andy Beshear on August 10, 2021, which requires all teachers, staff, students, and visitors in Kentucky schools (preschool through grade 12) to wear face masks while indoors, regardless of vaccination status.[1]

The Court will explain in more detail below the background to this dispute and the bases for plaintiffs' claims. Recognizing the urgency of this matter, however, the Court is issuing an initial opinion as expeditiously as possible.

---

[1] That Executive Order may be found in the electronic record of this case at Doc. 6-3, pp. 7-11.

Plaintiffs initially filed this case in Campbell Circuit Court in Campbell County, Kentucky on August 13, 2021. (Notice of Removal, Doc. 1, ¶ 1). On August 15, 2021, defendant Governor Andy Beshear removed the case to this Court invoking federal question jurisdiction and supplemental jurisdiction over plaintiffs' state law claims. Following the recusal of the drawing judge, the case was assigned to the undersigned. (Doc. 4).

On August 19, 2021, plaintiffs filed an Amended Complaint adding additional allegations in support of their First Amendment claim, as well as a prayer for damages. (Doc. 9).

The case is now before the Court on plaintiffs' Verified Petition for Declaration of Rights and Motion for Injunctive Relief (Doc. 6-1 at 2-39, Doc. 6-2 at 2-36, Doc. 6-3 at 2-14) ("Complaint") and Plaintiffs' Motion for an Ex-Parte Emergency Motion for Injunctive Relief (Doc. 1-4 at 2-5). Plaintiffs' allegations are verified by Dr. Jessica Twehues, a licensed psychologist and parent of three of the plaintiff children, (Docs. 1-5, 8).

Finding that plaintiffs' Motion for an Ex-Parte Emergency Motion for Injunctive Relief is well taken, the Court issues this Memorandum Opinion and Order and an accompanying Temporary Restraining Order.

*Factual and Procedural Background*

**A.  The Pandemic and Beshear's Executive Orders**

"On March 6, 2020, as the COVID-19 global pandemic reached Kentucky, Governor Andy Beshear declared a state of emergency pursuant to Executive Order 2020-15. In the ensuing days and weeks, he issued additional executive orders and emergency regulations to address the public health and safety issues created by this highly contagious disease." *Beshear v. Acree*, 615 S.W.3d 780, 786 (Ky. 2020).

Governor Beshear's ensuing Executive Orders directed, as relevant here, the closure of schools and the imposition of mask mandates in public places within the Commonwealth. (Complaint ¶¶ 4-5).

The authority for these Executive Orders, which soon became the subject of litigation in both state and federal courts in Kentucky, was Kentucky Revised Statutes, Chapter 39A, the statute that establishes a broad emergency management system in Kentucky. *See generally Acree*, 615 S.W.3d at 799-800 (discussing the history of KRS 39A).

As part of the firestorm of litigation surrounding Governor Beshear's COVID-related Executive Orders, the Supreme Court of Kentucky, in *Acree*, heard claims brought by business owners who challenged the Governor's authority to declare a state of emergency and to issue certain orders related to the pandemic.

3

In a decision issued on November 12, 2020, the Court largely rejected these challenges. Specifically, the Court disagreed with plaintiffs that the law giving Beshear the authority to take the challenged actions violated a principle called the "nondelegation doctrine." *Id.* at 809-13. This simply means that, generally speaking, the legislative branch of our government (here*,* the General Assembly) cannot give its lawmaking authority to the Executive Branch (here, the Governor). The Court reached this conclusion because the law in question was not open-ended but instead placed certain restrictions on the Governor's authority, the details of which are lengthy and not relevant here. *Id.*

However, the Supreme Court of Kentucky made another important point. Invoking longstanding democratic principles, the Court noted (prophetically, it would appear): "There is nothing wrong with this [delegation of authority] so long as the delegating authority **retains the right to revoke the power**." *Id.* at 810 (quoting *Commonwealth v. Associated Industries of Kentucky*, 370 S.W.2d 584, 588 (Ky. 1963)) (emphasis added).

In other words, the General Assembly, through legislative action, can take back what it has given. In early 2021, it did just that.

B.  **The General Assembly Takes Action**

During the 2021 legislative session, the Senate passed two bills (Senate Bills 1 and 2), and the House passed a bill (House

4

Bill 1) and a Joint Resolution, which collectively amended KRS 39A, placing limits on the Governor's authority to issue Executive Orders and regulations relating to the COVID-19 pandemic. (Complaint ¶¶ 6-10). The Governor vetoed each of these measures, but his vetoes were overridden by the General Assembly and the measures thus became law. (*Id.*).

House Joint Resolution 77 provided that all COVID-19 related executive orders, unless specifically ratified by that resolution, were no longer in force or effect. (Doc. 6-2 at 2). This caused the Governor's most recent declaration of a state of emergency to expire.

Next, Senate Bill 1 amended KRS 39A.090(3) to provide that once an executive order declaring a state of emergency has expired, the Governor "shall not declare a new emergency or continue to implement any of the powers enumerated in this chapter based upon the same or substantially similar facts and circumstances as the original declaration or implementation **without the prior approval of the General Assembly.**" (Doc. 6-1 at 23-24) (emphasis added). Senate Bill 1 also amended KRS 39A.090(2)(a)(1) to provide that any Executive Order restricting the functioning of certain institutions, including schools, shall be in effect for no longer than 30 days unless the General Assembly approves an extension. (Doc. 6-1 at 23).

    C.    **The August 10, 2021 Executive Order**

Notwithstanding the above legislation, on August 10, 2021, Governor Beshear unilaterally issued new Executive Order 2021-585 which: (1) declared a state of emergency in Kentucky based upon COVID-19; and (2) ordered that "[a]ll individuals – all teachers, staff, students, and visitors – must cover their nose and mouth with a face covering when indoors in all public and private preschool, Head Start, elementary, middle, and high schools (preschool through grade 12) in Kentucky, including but not limited to inside of vehicles used for transportation such as school buses, regardless of vaccination status." (Doc. 6-3 at 9-11).

In direct response to this Executive Order, the Diocese of Covington, which had previously announced that masks would be optional in its schools upon commencement of the 2021-2022 school year, announced that masks would now be mandatory. (Doc. 6-3 at 2-6). St. Joseph School sent an email to plaintiffs informing them of the mask requirement, noting that it applied to children as young as 2 years old. (Dc. 6-2 at 5).

This lawsuit followed.[2]

---

[2] The Court is aware that multiple cases involving the amendments to KRS 39A and the Governor's recent Executive Orders are pending at various levels in Kentucky state courts. For example, plaintiffs attach to their complaint a copy of a lengthy decision issued on August 15, 2021, in which the Boone Circuit Court found the recent enactments constitutional and declared that Governor Beshear's actions and orders in contravention of the statutes are unconstitutional, void, and without legal effect. *Ridgeway*

6

***Analysis***

Having recounted the above facts, there is little that remains to be said.

Plaintiffs have shown a likelihood of success on the merits of their claim that the Governor's unilateral issuance of Executive Order 2021-585, without the prior approval of the General Assembly, violates KRS39A.090(3), which is the product of House Bill 1, Senate Bill 1, Senate Bill 2, and House Joint Resolution 77, all passed by the Kentucky General Assembly in its 2021 session.

The Executive Branch cannot simply ignore laws passed by the duly-elected representatives of the citizens of the Commonwealth of Kentucky. Therein lies tyranny. If the citizens dislike the laws passed, the remedy lies with them, at the polls.

Therefore, having reviewed the record, the Court finds that plaintiffs' emergency motion for a temporary restraining order is well taken. The full reasons therefor are set forth in the

---

*Properties, LLC dba Beans Café & Bakery, et al. v. Beshear*, Case No. 20-CI-678 (Doc. 6-2 at 7-36). That opinion references other cases dealing with these issues which are pending in Kentucky.

However, to the extent that plaintiffs' claims arise under federal law, rulings by the state courts are not binding on this Court. And, as to plaintiff's state law claims, this federal court's task is to predict how the Supreme Court of Kentucky would rule on them. *State Auto Property and Casualty Ins. Co. v. Hargis*, 785 F.3d 189, 195 (6th Cir. 2015).

Temporary Restraining Order that shall enter concurrently herewith.[3]

Therefore, having reviewed this matter, and the Court being advised,

**IT IS ORDERED** that:

(1) Plaintiffs' Motion for an Ex-Parte Emergency Motion for Injunctive Relief (Doc. 1-4 at 2-5) be, and is hereby, **GRANTED**. A Temporary Restraining Order shall enter concurrently herewith; and

(2) A hearing on plaintiffs' motion for a preliminary injunction be, and is hereby, **SET FOR AUGUST 24, 2021 AT 1:00 p.m. in Courtroom A.**

This 19th day of August 2021.



Signed By:
*William O. Bertelsman* WOB
United States District Judge

---

[3] The Court will defer consideration of plaintiffs' other causes of action to further proceedings.